IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Keisha B.,[1] | ) | Case No.: 4:24-cv-182-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Michelle King, Acting Commissioner of | ) | **OPINION AND ORDER** |
| Social Security Administration,[2] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter is before the court for review of the August 26, 2024 Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, III (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.). [ECF No. 19.] In the Report, the magistrate judge recommends the court affirm the Commissioner's final decision concluding Plaintiff's disability had ended on April 13, 2018, and she had not become disabled again since that date. *Id.* Plaintiff filed timely objections to the Report. [ECF No. 20.] For the reasons outlined herein, the court adopts the Report and affirms the Commissioner's final decision.

**STANDARD OF REVIEW**

The scope of federal court review under 42 U.S.C. § 405(g) is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Michell King was named as Acting Commissioner on January 20, 2025. Pursuant to Fed. R.

(4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence" is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to the court. The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1). In the absence of specific objections to portions of the Report, this court is not required to explain its reasons for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). It must "only satisfy itself that there is no clear error on the face of the

---

Civ. P. 25(d), she is substituted as a party to this action.

record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

## DISCUSSION

The Report sets forth the administrative proceedings and applicable law, which the court incorporates herein without a full recitation. [ECF No. 19.] Plaintiff objects to the magistrate judge's findings that the ALJ did not err in: (1) analyzing the comparison point decision ("CPD"); (2) assessing her residual functional capacity ("RFC"); and (3) evaluating her subjective symptoms. Given the specificity of Plaintiff's objections, the court reviews them de novo.

1. Evaluation of CPD

Plaintiff was initially awarded benefits because she met a listing based on her seizure disorder. But, in a later review, she was found to no longer be disabled. She now challenges the comparison point decision used in that decision that resulted in her benefits being revoked. But, to evaluate Plaintiff's argument, it is necessary to understand the history of her award, continuation, and cessation of benefits.

On January 31, 2000, the Social Security Administration ("SSA") issued a determination ("2000 Decision") finding Plaintiff was disabled within the meaning of the Social Security Act. Tr at 358. SSA later conducted a continuing disability review ("CDR") and issued a decision on June 9, 2003 ("2003 Decision") finding medical improvement had not been established and Plaintiff's disability continued. Tr. at 358–59. After a second CDR, the SSA issued a decision on April 13, 2018, ("2018 Decision") finding Plaintiff's disability had ceased. Tr. at 104–09.

Plaintiff argues the magistrate judge erred in finding the 2003 Decision was not the CPD. [ECF No. 20 at 1.] She maintains 20 C.F.R. § 404.1594 required the ALJ to consider that periods of remission like those she was experiencing before and after 2018 were also reflected in the

2003 decision. *Id.* She claims the ALJ should have compared the frequency of her seizures in 2003 to the relevant period. *Id.* at 2.

Under the applicable regulation,

Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1). The regulation further states:

For purposes of determining whether medical improvement has occurred, we will compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled to the medical severity of that impairment(s) at that time. If medical improvement has occurred, we will compare your current functional capacity to do basic work activities (i.e., your residual functional capacity) based on this previously existing impairment(s) with your prior residual functional capacity in order to determine whether the medical improvement is related to your ability to do work. The most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether you were disabled or continued to be disabled which became final.

20 C.F.R. § 404.1594(b)(7).

The 2003 decision indicated the 2000 Decision had allowed disability benefits based on a finding that Plaintiff's impairment met Listing 11.03. Tr. at 359. It cited the following "signs, symptoms, and lab findings": "Complex Seizures occurring> 1 x wk. Compliant [with] Rx" as present at the time of the 2000 Decision. *Id.* It identified the "[c]urrent[] signs, symptoms, [and] lab findings" as follows:

4

> Pheno levels –
>
> 3/3/03 — 62.9 ⎫ out of range
> 3/11/03 — 53.8 ⎭
> 4/8/03 — 39.5 (in range)
>
> Dr. Waite 3/03 TP statement
> "The phenobarbital does not allow her to function adequately. I feel she remains disabled & her ability to concentrate/assist in tasks/interact socially is severely limited by not only her psychiatric disorder – but, also by her medication."
>
> Hx of sz D/O x 15 yrs
>
> Reports 3-4 seizures/mo
> Rx compliant c̄ varying lab values which have only recently been stabilized – seizures continuing c̄ therapeutic levels

*Id.* Based on this information, the decision found medical improvement had not been established. *Id.*

A review of the Report refutes Plaintiff's claim that the magistrate judge did not consider the 2003 decision to be the CPD. Indeed, the magistrate judge stated, "[t]here is no disagreement that June 9, 2003 is the CPD" although it was "not the decision at issue before this court." [ECF No. 19 at 6.] The magistrate judge correctly noted that it was not the purpose of the ALJ or this court to assess why the SSA reached the conclusion it reached in the 2003 Decision. He pointed

5

out the ALJ "considered the frequency of seizures at the CPD of 3–4 seizures a month" as reflected in the 2003 decision and compared it to records during the relevant period. Tr. at 6–7.

The magistrate judge and the ALJ reasonably determined the 2003 decision had continued Plaintiff's disability because evidence of three to four seizures per week continued to support a finding of disability under Listing 11.03. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 11.03 (effective to March 24, 2005) (indicating "Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed descriptions of a seizure pattern, including all associated phenomena, occurring more frequently than once weekly despite at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.").

The magistrate judge noted Plaintiff "simply no longer had the number and frequency of seizures required to meet a Listing that she had fifteen years before." [ECF No. 19 at 8.] His conclusion is supported by the ALJ's explanation that the Plaintiff's seizure pattern at the time of the 2018 Decision and thereafter did not satisfy the requirements of the epilepsy listing.[3] *See* Tr. at 37.

The magistrate judge indicated Plaintiff's "characterization of her improvement as a temporary remission fails to compel reversal of the ALJ's decision." [ECF No. 19 at 8.] Plaintiff compels the court to look beyond the 2003 decision and at the records from 2000 to 2002 that accompanied it. She claims 20 C.F.R. § 404.1594 required the ALJ "to consider the recurrences

---

[3] The listings were revised between 2003 and 2018, but, at the time of the 2018 Decision, they remained essentially the same, but were categorized under Listing 11.02. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 11.02(B) (indicating "Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)").

6

of prior remissions and worsening futures" and points out that records from the 2003 decision reflect a period of remission of symptoms. *See* ECF No. 20 at 1–2. The regulation provides:

> In some cases the evidence shows that an individual's impairments are subject to temporary remission. In assessing whether medical improvement has occurred in persons with this type of impairment, we will be careful to consider the longitudinal history of the impairment, including the occurrence of prior remissions, and prospects for future worsening. Improvement in such impairments that is only temporary will not warrant a finding of medical improvement.

20 C.F.R. § 404.1594(c)(3)(iv). Plaintiff is correct that medical records from the 2003 decision reflect a period of remission. *See* Tr. at 380 (record dated April 15, 2002 states "[s]he continues seizure free now for 1 year and 5 months"). However, the ALJ aptly explained that the record over the period relevant to the 2018 decision did not reflect only temporary improvement as they showed seizures occurred only rarely over a period of approximately five years. The ALJ detailed the more recent records reflected as follows: no neurology treatment between 2017 and 2019; optometry treatment only between October 2020 and August 2022; Dr. Mayville's indications Plaintiff "ha[d] not had a definite seizure" and that her seizures were "seemingly under control[;]" Dr. McKinley's April 2018 notation of two seizures with seizure disorder at baseline; Dr. Rose's notes reflecting that Plaintiff's "most recent grand mal seizure occurred approximately five years ago[;]" Plaintiff's representations of a couple of episodes in 2020 that could have been seizures or panic attacks; and her August 2022 report to neurology that she had a possible seizure in June. Tr. at 6–7 (citing Tr. at 41, 43, 45, 46). Thus, the magistrate judge reasonably concluded, and the ALJ sufficiently explained, that the record did not merely reflect a period of temporary remission.

The court further notes the evidence of remission was not considered persuasive in the 2003 decision because it was not cited. Instead, the 2003 decision credited Plaintiff's report of three to four seizures per week, which were consistent with the listing. *See* Tr. at 359. Although

7

the record before the court contains medical evidence from the 2003 CDR file, it does not contain the entire record on which the adjudicator relied. Therefore, it was appropriate for the ALJ and the magistrate judge to look primarily to the decision itself, as opposed to the underlying medical records in reaching the conclusion that Plaintiff no longer met the epilepsy listing at the time of the 2018 CDR.

In light of the foregoing, the court overrules Plaintiff's objection and finds the magistrate judge appropriately complied with the requirements of 20 C.F.R. § 404.1594 in considering the CPD.

    2.    RFC

Plaintiff argues the magistrate judge did not address the ALJ's failure to account for her moderate limitations in interacting with others and adapting and managing herself in the RFC assessment. [ECF No. 20 at 3.] She maintains that although the magistrate judge found the ALJ accounted for her migraines by including stress-related restrictions, he did not address the ALJ's failure to account for migraines once they occurred. *Id.* at 4. She refutes the magistrate judge's conclusion that the ALJ adequately accounted for her seizures by restricting her climbing, driving, and exposure to hazards. *Id.* She asserts remand is necessary because the ALJ did not account for time off task or her need for unscheduled breaks. *Id.* at 4–5.

The magistrate judge found the ALJ accommodated Plaintiff's moderate limitations in interacting with others and adapting and managing herself by restricting her to simple one- and two-step instruction, only occasional changes, occasional public interaction, and frequent, as opposed to constant, interaction with coworkers and supervisors. [ECF No. 19 at 9–10.] He noted the ALJ explained the limitation to one- and two-step instructions accounted for Plaintiff's "level of educational attainment and the full medical evidence record," "address[ed] limitations in understanding, remembering, and applying information," and was "less stressful and require[d]

less focus to maintain production standards and pacing" to address concerns as to her pace. *Id.* at 10 (citing Tr. at 47). He stated the ALJ "noted reduced public interaction would also simplify interactions and prevent distractions which also relate to [concentration, persistence, and pace]." *Id.* (citing Tr. at 47). He indicated the ALJ explained the "restrictions in interacting with others also addresses [Plaintiff's] limitations in adapting and managing by avoiding possible stress caused during interactions in addition to addressing limitations in interacting with others." *Id.*

Nevertheless, Plaintiff claims the restrictions the ALJ included in the RFC assessment did not adequately account for the moderate limitations the ALJ assessed in interacting with others and adapting or managing herself. The court finds the ALJ's explanation for the moderate limitations he assessed to be instructive in these areas. As to interacting with others, the ALJ wrote:

> Here, the claimant alleged that she has difficulty engaging in social activities and getting along with others. However, according to her statements, the claimant is also able to shop in stores, spend time with friends and family, and live with others. Finally, the medical evidence shows the claimant had a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments. (Hearing Testimony; Exhibits 9E; 4F; 5F; 12F; 12F/ 18F).

Tr. at 40. It was not unreasonable for the ALJ to find Plaintiff could occasionally interact with the public given her ability to shop in stores or to find she could frequently interact with supervisors and coworkers given her ability to interact with friends, family, medical providers, and non-medical staff.

The ALJ explained his assessment of moderate limitations in Plaintiff's ability to adapt or manage herself as follows:

> The claimant asserted she has difficulties managing her mood. That said, the claimant also stated that she is able to handle self-care and personal hygiene and get along with caregivers. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene, no problem

9

>getting along well with providers and staff, normal mood and affect, and no problems with temper control. (Hearing Testimony; Exhibits 9E; 12F).

*Id.* Given this explanation, the court concludes the ALJ reasonably accommodated Plaintiff's moderate limitation in adapting or managing herself by limiting her interaction as described above and restricting her work environment to one that included only simple one- and two-step instructions and occasional changes in setting and routine.

The magistrate judge considered Plaintiff's argument that the ALJ did not adequately account for her migraines in the RFC assessment. [ECF No. 19 at 10.] He noted the ALJ considered evidence that Plaintiff treated daily headaches in 2019 with over-the-counter medication, reported "a lot of headaches" after being hit in the head with a tree limb in 2020, and subsequently characterized her headaches as "intermittent." *Id.* at 10–11. He noted the ALJ had found Plaintiff's reported "headaches, panic attacks, and seizures all seemed to be triggered by stress" and had accommodated them by including provisions in the RFC assessment to minimize stress in her work environment. *Id.* at 11.

The court has considered Plaintiff's argument that, while the ALJ attempted to tailor the work environment to one that would minimize her headache triggers, he failed to account for headaches that might still occur. The ALJ adequately explained that evidence suggested Plaintiff's headaches occurred with intermittent frequency such that they did not follow a regular pattern. *See* Tr. at 39. Given the intermittent nature of Plaintiff's headaches and indications from her neurologist that they tended to be triggered by stress, the court finds the ALJ reasonably addressed them in the RFC assessment by minimizing her stressors and did not err in failing to include provisions for time off-task due to headaches where the headaches occurred only intermittently and did not follow any definable pattern such that the ALJ could reasonably determine the amount of time off-task they would require.

The magistrate judge concluded the ALJ was not required to account for the frequency of Plaintiff's seizures in the RFC assessment because he explained that her seizures were so infrequent that she went years without having any. [ECF No. 19 at 11.] However, he noted the ALJ did account for potential seizure activity by restricting Plaintiff from climbing ropes, ladders, or scaffolds, exposure to hazards, and driving a vehicle as part of employment. *Id.* at 12. The court finds the Report correctly concluded the ALJ's explanation constitutes substantial evidence supporting his decision not to include additional time off-task in the RFC assessment to account for Plaintiff's seizure activity. This conclusion is based on the absence of evidence in the record indicating that the Plaintiff's seizures occurred with any frequency or regularity.

In light of the foregoing, the court overrules Plaintiff's objection to the magistrate judge's evaluation of the RFC assessment and finds it to be supported by substantial evidence.

3.      Subjective Symptoms

Plaintiff argues the magistrate judge did not address the specific evidence she cited in her brief that refuted the ALJ's conclusion that her statements were not consistent with the evidence. [ECF No. 20 at 5.] Plaintiff's objection is unfounded. In discussing the ALJ's evaluation of her subjective symptoms in her brief, Plaintiff merely states the relevant law and the ALJ's conclusion but does cite specific evidence or explain how this evidence is inconsistent with the ALJ's conclusion. *See* ECF No. 14 at 31–34. She provides no more specific explanation in her objections. *See* ECF No. 20 at 5–6.

The ALJ discussed Plaintiff's testimony and found her "medically determinable impairments could have reasonably been expected to produce some alleged symptoms," but her "statements concerning the intensity, frequency, persistence, and limiting effects of these symptoms [were] not entirely consistent with the objective medical and other evidence." Tr. at 42–43. He indicated, "these statements have been found to affect the claimant's ability to work

only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." Tr. at 43. He specified: "The frequency of seizures alleged and the alleged severity of her mental health, migraine and vision impairments is not suppo[rt]ed b[y] the record." *Id.*

In her brief, Plaintiff generally alleged the ALJ erred in rejecting her subjective allegations based on a lack of objective evidence to corroborate it. [ECF No. 14 at 31–33.] The magistrate judge thoroughly explained that the ALJ had not relied on the objective evidence alone but had considered it in combination with other relevant evidence, including Plaintiff's daily activities, the treatment she had received for her impairments, including gaps in treatment, factors that aggravated her symptoms, her reports to her medical providers, and her testimony. [ECF No. 19 at 14–16.] The regulations specifically provide that that ALJs should consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence" in "evaluat[ing] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit [her] ability to perform basic work activities." *See* 20 C.F.R. § 416.929(c). Therefore, the magistrate judge correctly noted the ALJ had relied on relevant objective and subjective evidence in finding Plaintiff's subjective allegations were undermined by conflicts with the other evidence of record.

In light of the foregoing, the undersigned overrules Plaintiff's objection and finds the ALJ cited substantial evidence to support his conclusion that Plaintiff's testimony was inconsistent with other objective and subjective evidence of record.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record in this case, the court adopts the Report, ECF No. 19, and affirms the Commissioner's decision.

IT IS SO ORDERED.

January 28, 2025
Columbia, South Carolina

Sherri A. Lydon
United States District Judge